UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DENNIS GALARZA; JASON
GALARZA; ERICSON LUBIN; JOSHUA
PAGAN; NELSON RODRIGUEZ;
CESAR SEDA; and LUIS TORRES,

    Plaintiffs,

v.                                                                                       Case No. 6:16-cv-877-Orl-37KRS

FITNESS INTERNATIONAL LLC,

    Defendant.

## ORDER

Before the Court is Defendant's summary judgment motion (Doc. 30)—the latest round in this briefing battle between: (1) boxing professionals Plaintiffs Dennis Galarza, Ericson Lubin, Joshua Pagan, Cesar Seda, Luis Torres, Jason Galarza, and Nelson Rodriguez; and (2) Defendant Fitness International LLC. The motion has been fully briefed (*See* Docs. 33, 39), and for the reasons set forth below, Defendant's motion is due to be granted.

### I.     BACKGROUND[1]

In the instant action, Plaintiffs—members of racially protected classes[2]—have

---

[1] The facts recited here reflect Plaintiffs' version of the facts—that is, Plaintiffs' "best case," which the Court must consider at this stage of the proceedings. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

[2] Ericson Lubin is an African-American male. (Doc. 19, ¶ 6.) The remaining Plaintiffs are Hispanic males. (*Id.* ¶¶ 4–5, 7–10.)

-1-

asserted a racial discrimination claim against Defendant under 42 U.S.C. § 1981, based on circumstances surrounding their removal from a fitness center. (*See* Doc. 19.) The events leading up to this action arose on January 13, 2016, when Plaintiffs arrived at Defendant's LA Fitness facility—located at 1540 S.R. 436, Winter Park, Florida ("**S.R. 436 Location**")—to use the pool ("**Pool**"). (*See* Doc. 31-5, pp. 13–14.) After checking in, Plaintiffs Dennis Galarza, Ericson Lubin, Joshua Pagan, Cesar Seda, and Luis Torres ("**Boxers**") entered the pool area and began swimming drills, a routine component of their boxing training. (Doc. 31-5, pp. 13–14.) Meanwhile their trainers ("**Trainers**")—Plaintiffs Jason Galarza ("**Mr. J. Galarza**") and Nelson Rodriguez ("**Mr. Rodriguez**")—sat in the corner of the pool area discussing training plans. (Doc. 31-8, p. 16.) As two other white patrons entered the pool, the Boxers, who were occupying all three lanes, shifted to a single lane. (Doc. 31-8, pp. 24–25, 35, 40.)

According to the Trainers, shortly after the Boxers began swimming, an "irate" white LA fitness employee tapped on the window to the pool area and began gesturing in the Trainers' direction. (Doc. 31-5, p. 14; *see also* Doc. 31-2, p. 18; Doc. 31-8, p. 18). This employee was later identified as Mark Renshaw ("**Mr. Renshaw**"), general manager of the S.R. 436 Location. (*See* Doc. 31-2, p. 10.) To Mr. Renshaw, the Trainers appeared to be "training" the Boxers (Doc. 31-2, pp. 18–19), which members and guests are prohibited from doing ("**No Training Policy**") under LA Fitness' Membership Agreements ("**Membership Agreements**") (*e.g.*, Doc. 15-1, p. 9 ("No Member or guest may coach or

train other Members or guests (as determined by LA Fitness)")).[3]

Ignoring Mr. Renshaw's gestures, the Trainers continued talking with each other. (*See* Doc. 31-8, p. 19.) Calvin White ("**Mr. White**"), personal training director at the S.R. 436 Location (Doc. 31-1, p. 21) then approached the Trainers, accused them of training the Boxers, and told them that they and the Boxers had to leave.[4] (Doc. 31-5, p. 15; *see also* Doc. 31-8, pp. 20–25). In response, the Trainers explained that they were not coaching the Boxers, as the Boxers already knew the routine and required no direction. (Doc. 31-8, pp. 21–22, 25; *see also* Doc. 31-5, p. 18.) To assuage Mr. White's concerns, the Trainers offered to get in the pool with the Boxers or wait in the car while the Boxers finished their swimming drills. (Doc. 31-8, pp. 23–24.) Unsatisfied, Mr. White repeated his demand that Plaintiffs leave. (Doc. 31-5, p. 18; *see also* Doc. 31-8, pp. 23, 26.)

As the Boxers exited the pool, Mr. Rodriguez proceeded to the lobby of the S.R. 436 Location to inquire about Plaintiffs' expulsion from the facility. (Doc. 31-8, p. 30.) According to Mr. Rodriguez, Mr. Renshaw ignored his attempts at discussion. (*Id.* at 28–29.) Moments later, Mr. J. Galarza entered the lobby. (*See* Doc. 31-5, p. 16.) At that time, Melissa Ciurznski ("**Ms. Ciurznski**"), operations manager of the S.R. 436 Location (Doc. 31-3, p. 15), was stationed at the front desk (Doc. 31-5, p. 16). Mr. J. Galarza asked her for a copy of the Membership Agreements and "the real reason why [Plaintiffs had]

---

[3] Plaintiffs Dennis Galarza, Ericson Lubin, Luis Torres, and Nelson Rodriguez are members of LA Fitness. (Doc. 19, ¶ 15.) On the day in question, Plaintiffs Jason Galarza, Joshua Pagan, and Cesar Seda entered the S.R. 436 Location under guest passes. (*Id.* ¶ 16.)

[4] As Plaintiffs repeatedly point out, Mr. White is black. (*See* Doc. 31–8, pp. 20, 22; *see also* Doc. 31-5, p. 18.) According to Plaintiffs, Defendant sent him to remove them from the facility to counter any suspicions of racial discrimination. (*See* Doc. 31-8, p. 22.)

to leave." (Doc. 31-5, p. 16; *see also* Doc. 31-8, p. 31.) When Mr. J. Galarza explained that the Trainers were not coaching the Boxers (Doc. 31-5, p. 16), Ms. Ciurznski stated that Plaintiffs were making her and other patrons feel uncomfortable because they were "different" and pointed to her arm ("**Ms. Ciurznski's Statement and Gesture**") (Doc. 31-8, pp. 35, 38). Notably, Ms. Ciurznski is white. (*See id.* at 38.) Following this exchange, and without receiving a copy of the Membership Agreements, Plaintiffs left the S.R. 436 Location. (Doc. 31-5, p. 17; *see also* Doc. 31-8, p. 41.)

Based on the foregoing, Plaintiffs initiated this action on May 23, 2016, alleging that their eviction from the S.R. 436 Location prevented them from enjoying the benefits of their contractual rights under their Membership Agreements in violation of 42 U.S.C. § 1981 ("**§ 1981 Claim**"). On March 1, 2017, Defendant filed the instant motion for summary judgment, seeking to knock out Plaintiffs' § 1981 Claim. The motion is now ripe for the Court's determination.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the nonmoving party on all of the essential elements of its case." *Landolfi v. City of Melbourne,*

*Fla.*, 515 F. App'x 832, 834 (11th Cir. 2012) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the nonmoving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflict arises between the facts evidenced by the parties, [the] court credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). However, "[the] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### B. Non-employment Discrimination under § 1981

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contacts,"[5] and that such right shall be "protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(a), (c). To succeed on a § 1981 claim based on non-employment discrimination, a plaintiff must establish that: (1) he is a member of a protected class; (2) the defendant intended to discriminate against him on the basis of his inclusion in that protected class; and (3) the defendant's racially discriminatory conduct abridged a right under § 1981. *See Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891–92 (11th Cir. 2007); *see also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000).

A plaintiff may establish that a defendant intended to discriminate through either direct or circumstantial evidence. *Kinnon*, 490 F.3d at 891–93. Direct evidence is "evidence that, if believed, proves the existence of a fact without inference or presumption." *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). Only the "most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) (quoting *Wilson*, 376 F.3d at 1086).

---

[5] "Make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Conversely, circumstantial evidence "suggests, but does not prove, a discriminatory motive." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1236 (11th Cir. 2016) (quoting *Wilson*, 376 F.3d at 1086). Such evidence is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–05 (1973). *See Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524–25 (11th Cir. 1994) (applying the burden-shifting framework of *McDonnell Douglas* to a § 1981 claim).

Under this analytical scheme, a plaintiff must first establish a prima facie case of discrimination, thereby creating an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To demonstrate a prima facie case outside the employment context, courts within the Eleventh Circuit have required a plaintiff in a protected class to show that: (1) he sought to make or enforce a contract ordinarily provided by a defendant; and (2) the defendant treated the plaintiff less favorably than other similarly situated persons outside the plaintiff's protected class.[6] *See, e.g.*, *Benton v. Cousins Props., Inc.*,

---

[6] Admittedly, courts have struggled to identify the appropriate elements of a prima facie test applicable to § 1981 claims outside the employment context. *See West v. LQ Mgmt., LLC*, 156 F. Supp. 1361, 1366–67 (S.D. Fla. 2015). For example, in *West v. LQ Management*, LLC, the district court discussed two prima facie tests, the primary difference being whether or not a plaintiff must identify a comparator. *Id.* As articulated by the Eleventh Circuit, the non-comparator test has been applied in the retail-services context, such that "in [the] absence of comparator evidence, [a] plaintiff may establish [a] prima facie case by showing markedly hostile conduct outside widely accepted business norms." *Allen v. CLP Corp.*, 460 F. App'x 845, 858 (11th Cir. 2012) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 871 (6th Cir. 2001)). As the parties agree that Plaintiffs must show a comparator to establish a prima facie case of discrimination (Doc. 30, pp. 16–18; Doc. 33, pp. 17–18), the Court has applied this test. However, even if the Court employed the non-comparator test, Plaintiffs have failed to demonstrate conduct outside widely-accepted business norms.

230 F. Supp. 2d 1351, 1370 (N.D. Ga. 2002). A defendant must then articulate a legitimate, nondiscriminatory reason for the adverse action and produce supporting evidence. *Id.* If such a reason is produced, a plaintiff has the ultimate burden of proving that the defendant's proffered nondiscriminatory reason is merely a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516–17 (1993); *see also Equal Emp. Opportunity Comm'n v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

### III. ANALYSIS

Here, neither party disputes that Plaintiffs are members of a protected class. (Doc. 30, p. 11; *see also* Doc. 33, p. 10.) However, Plaintiffs' evidence of intentional discrimination fails to land a punch, as they are unable to establish this element of a prima face case by either direct or indirect evidence. Plaintiffs first argue that Ms. Ciurznski's Statement and Gesture is direct evidence of Defendant's intentional discrimination. (Doc. 33, pp. 12–16.) Not so. Ms. Ciurznski's Statement and Gesture requires the Court to infer that Defendant removed Plaintiffs from the S.R. 436 Location based on their skin color. *See Quigg*, 814 F.3d at 1236. While such an inference is certainly plausible, it is circumstantial at best and, therefore, it is not direct evidence.

Turning to Plaintiffs' alternative argument, the Court also concludes that Plaintiffs have failed to demonstrate intentional discrimination based on circumstantial evidence, as they failed to establish a prima facie case of racial discrimination. Construing the evidence in the light most favorable to Plaintiff, as it must, the Court finds that Plaintiffs clearly sought to enforce their contractual right to use the S.R. 436 Location on the date in question. But Plaintiffs have failed to produce evidence that Defendant treated

similarly situated persons outside Plaintiffs' protected classes more favorably. To do so, Plaintiffs must show "an apt comparator of a different race who was not subjected to the same harsh treatment with regard to the enforcement of a contract." *Benton*, 230 F. Supp. 2d at 1370. Thus, Plaintiffs must show that they and their non-minority comparators are similarly situated in all relevant respects. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). To this end, the Court may consider whether their comparators were involved in or accused of the same or similar conduct and disciplined in different ways. *Id.*

Here, Plaintiffs first contend that they have identified the following apt comparators: (1) a white high school swim team that trains at a different LA Fitness facility; and (2) the other white patrons in the Pool at the S.R. 436 Location on the day of the incident. (Doc. 33, pp. 17–18.) Though Plaintiffs argue that neither group was removed from the S.R. 436 Location (*id*), neither group is "similarly situated" in all relevant respects. As to the other white patrons in the Pool, Plaintiffs have not established that they were also accused of "training" others but permitted to stay. Rather, Plaintiffs only state that the other white patrons were using the Pool. (*See* Doc. 33, p. 17; *see also* Doc. 31-8, pp. 16, 37.) Likewise, the white swim team is not similarly situated, as they were "training" at an entirely different location. (*See id.* at 18.)

Plaintiffs' next comparator is based on Defendant's admitted practice of warning first-time violators of the No Training Policy and removing them only after their second violation. (*Id* at 17–18.) Plaintiffs argue that Defendant treated them less favorably than similarly situated violators by removing them from the S.R. 436 Location after only their

first violation of the No Training Policy. (*Id.*) In support, Plaintiffs point to Mr. White's testimony that: (1) he had never removed anyone from the Pool before; and (2) he had only removed people from the facility for a second violation of the No Training Policy. (*See id.* at 18.)

Plaintiffs' arguments are unavailing for two reasons. First, while Mr. White testified that he had only removed people for a second violation of the No Training Policy (*see* Doc. 31-1, pp. 65–66, 72), he also attested that he had removed both a black and a white patron (*id.* at 66), which undercuts Plaintiffs' argument that they were treated less favorably because of their race. Second, the novelty of their removal from the Pool on their first violation does not aid Plaintiffs, as the Membership Agreements explicitly give Defendant discretion to define "training" and does not require one free pass on violations of the No Training Policy. (*See* Doc. 15-1, p. 9 ("LA Fitness may suspend or terminate a Member's right to use the club facilities . . . if Member or Member's guests violate [the Membership Agreement] or engage in other misconduct in or about the LA Fitness facility.").

As Plaintiffs have failed to identify an "apt comparator," they cannot establish a prima facie case of discrimination and, therefore, have failed to satisfy the second element of a § 1981 non-employment discrimination claim based on indirect evidence of intentional discrimination. Hence Plaintiffs' § 1981 Claim fails as a matter of law, and Defendant's motion for summary judgment is due to be granted.

### IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 30) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Fitness International LLC and against Plaintiffs Dennis Galarza, Ericson Lubin, Joshua Pagan, Cesar Seda, and Luis Torres, Jason Galarza, and Nelson Rodriguez.

3. The Clerk is **DIRECTED** to terminate all pending deadlines and to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 5, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record